RAYMOND R. ABRAMSON, Judge
Paul Gilton was convicted of two counts of sexual assault following a bench trial in the Craighead County Circuit Court. Gilton's sole argument on appeal is that the State's evidence did not sufficiently prove that he committed sexual assault; thus, the circuit court erred in denying his motion for a directed verdict. We affirm.
Janelle Hall is the mother of J.W. Hall testified that in February 2016, she had asked Gilton-J.W.'s paternal step-grandfather-to babysit J.W. while she ran some errands. At that time, J.W. was seven years old and Gilton was sixty-three years old. Upon returning home, Hall discovered J.W. in her underwear. According to Hall, J.W. had on a t-shirt and pajama pants when she left the home to run errands.
When Hall asked J.W. what had occurred, J.W. dropped her head and ran out of the room. Hall said she heard J.W. tell Gilton that she was going to tell on him for what he had done to her and Gilton stated that J.W. should "not do that or [we] would both get into trouble." After J.W. and Gilton's conversation, J.W. returned to the room and informed Hall that Gilton had tried to "hump" her. Hall asked Gilton about his actions, and Gilton informed Hall that he and J.W. were only wrestling. At that point, Hall no longer wanted Gilton at her home and asked Gilton's sister to pick him up.
Afterward, Hall and J.W. informed the Jonesboro Police Department that Gilton had sexually assaulted J.W. Officer Tyler Wilson completed an incident report and referred Hall to the Crimes Against Children Division (CACD) of the Arkansas State Police. Hall subsequently reported the information to the CACD. On February 17, 2016, Lesley Faulkner of the CACD interviewed J.W., videotaped the interview, and provided a transcribed copy of the interview to law enforcement.
On August 10, 2016, the State filed two counts of sexual assault against Gilton. The first count stemmed from the February *259 2016 allegations, and the second count stemmed from actions that were alleged to have occurred between October and November 2014. On September 15, 2017, the State filed an amended information charging Gilton as a habitual offender. Gilton waived his right to a jury trial, and a bench trial ensued.
As its primary witnesses, the State called J.W., Officer Wilson, Hall, Faulkner of the CACD, Annie Calwell, and Raymond Willison.[1] J.W. testified that (1) she was home alone with Gilton in February 2016; (2) Gilton was in her bedroom; (3) Gilton called her to the bedroom; (4) she got under the covers with him because she was cold; (5) Gilton got on top of her and started to "hump" her; (6) she told him to get off, but Gilton ignored her and continued to "hump" her; and (7) Gilton also "put his tongue in [her] mouth and kissed [her]." Additionally, J.W. testified that Gilton had bathed her a few times before February 2016. She said Gilton had washed her vagina, buttocks, and nipples.
Calwell is J.W.'s godmother and Hall's best friend, and she testified that sometime before 2016, she once heard Gilton talking about bathing J.W. Although she had never witnessed Gilton acting inappropriately with J.W., Calwell stated that she informed Gilton that J.W. was mature enough to bathe herself. Willison, Hall's former boyfriend, testified that he had seen, on a separate occasion before the February 2016 sexual assault, Gilton bathing and touching J.W. After the State rested, Gilton moved for a directed verdict, which the circuit court denied.
Gilton then presented his case-in-chief. He called Jessie Mae Gilton as his witness. Jessie Mae is Gilton's wife, and she testified that they were separated but while they were together, she had never witnessed Gilton acting inappropriately while J.W. or any other grandchild was in his care. Gilton renewed his motion for a directed verdict, and the circuit court denied it again. The circuit court found Gilton guilty of both counts of sexual assault. In its oral ruling, the circuit court stated,
The State has produced the proof concerning the age elements. The Court finds that there has been sufficient proof of sexual gratification and of sexual contact. The testimony of the witness Willison was credible. The timeframe bay [sic] be off and the Court will allow it because the child is a victim and the decision is based on the testimony of the statement of the child of the touching of the breasts. I also find that it makes no difference that he was fully clothed when I am finding him guilty because the statute states it can be through clothing.
The circuit court entered its order on January 25, 2018, sentencing Gilton to eight years' imprisonment on the first count and twelve years' imprisonment on the second count. This timely appeal followed. Gilton's sole argument on appeal is that the circuit court erred in failing to grant his motion for a directed verdict because the State did not present substantial evidence to support the convictions of sexual assault.
A motion for directed verdict is treated as a challenge to the sufficiency of the evidence. Castrellon v. State , 2013 Ark. App. 408, at 2, 428 S.W.3d 607, 609-10. In reviewing a challenge to the sufficiency of the evidence, this court determines whether the verdict is supported by substantial evidence, direct or circumstantial. Id. Substantial *260 evidence is evidence forceful enough to compel a conclusion one way or the other beyond suspicion or conjecture. Id. This court views the evidence in the light most favorable to the verdict, and only evidence supporting the verdict will be considered. Id. Weighing the evidence, reconciling conflicts in testimony, and assessing credibility are all matters exclusively for the fact-finder. See, e.g. , Wilson v. State , 2018 Ark. App. 371, at 3, 554 S.W.3d 279, 282.
Sexual assault in the second degree is committed when a person who is eighteen years of age or older engages in sexual contact with another person who is less than fourteen years old and not the person's spouse. Ark. Code. Ann. § 5-14-125(a)(3) (Supp. 2017). Sexual contact is defined as any act of sexual gratification involving the touching, directly or through clothing, of the sex organs, buttocks, or anus of a person or the breast of a female. Ark. Code Ann. § 5-14-101(11). Sexual gratification is not defined by the statutory code, but the two words have been interpreted according to their plain meaning. See Brown v. State , 374 Ark. 341, 288 S.W.3d 226 (2008).
Gilton contends that the State presented insufficient evidence to support his convictions because the State relied only on the testimony of J.W., Hall, Calwell, and Willison. He compares J.W.'s videotaped interview with her witness-stand testimony. He alleges that the "testimony of [J.W.] was inconsistent with the video in several places, specifically about the order of events, what [J.W.] was doing before and after the alleged incident, and details of time and statements made." According to Gilton, he alleges that J.W.'s testimony related to the alleged February 2016 sexual assault only and did not relate to the alleged October/November 2014 sexual assault that gave rise to count two because J.W. stated she did not remember that particular incident.
Gilton further alleges that Calwell and Willison-as the State's two character witnesses-"had no actual knowledge of the events leading to the charges against [t]he Appellant" and that "they simply testified to other, unrelated alleged incidents for which the Appellant had not been charged, or hearsay." Moreover, he contends that "[t]he offered testimony of all witnesses lacked corroborating evidence to sustain the elements of the charges."
For purposes of appellate review, the testimony of J.W., Officer Wilson, Hall, Faulkner, Calwell, and Willison are to be viewed most favorably to the State. See Castrellon , 2013 Ark. App. 408, at 2, 428 S.W.3d at 609-10. Most importantly, J.W. testified that Gilton had "humped" her-i.e., that he had inappropriately touched her-while she was under Gilton's care in February 2016 and that he had touched her vagina, buttocks, and nipples when he had bathed her on previous occasions even though, during her testimony, she did not remember the exact timeframe. We have held that a sexual-assault victim's testimony may constitute substantial evidence to support a sexual-assault conviction. See Brown , 374 Ark. at 342-45, 288 S.W.3d at 228-30 ; Wilson , 2018 Ark. App. 371, at 3, 554 S.W.3d at 282. Because the court found her credible, J.W.'s testimony did not need to be corroborated. See Brown , 374 Ark. at 342-45, 288 S.W.3d at 228-30 ; Wilson , 2018 Ark. App. 371, at 3, 554 S.W.3d at 282.
Also, Faulkner testified that she has "recorded and interviewed over a thousand children" and that she has "found that children will remember things later on that they did not initially remember when they were talking to me." Faulkner's testimony explains why J.W.'s interview and testimony about the February 2016 *261 sexual assault might not have aligned in every respect. The circuit court, and not this court, is responsible for weighing the evidence, reconciling conflicts in the testimony, and assessing witnesses' credibility. See, e.g. , Wilson , 2018 Ark. App. 371, at 3, 554 S.W.3d at 282. Also, the circuit court placed great weight on Willison's testimony regarding the October/November 2014 sexual assault and found him to be credible. In totality, the circuit court based its ruling on substantial evidence that supports Gilton's sexual-assault convictions and did not err in denying Gilton's motion for a directed verdict. Therefore, we affirm the circuit court's ruling.
Affirmed.
Gladwin and Murphy, JJ., agree.

Willison had been convicted of forgery and was incarcerated when he testified at Gilton's trial.