Cite as 2025 Ark. App. 419

# ARKANSAS COURT OF APPEALS
DIVISION IV
No. CR-24-639

| | | |
|---|---|---|
| TRACY DAVIS | | Opinion Delivered September 10, 2025 |
| | APPELLANT | |
| | | APPEAL FROM THE JEFFERSON COUNTY CIRCUIT COURT |
| V. | | [NO. 35CR-21-18] |
| STATE OF ARKANSAS | | HONORABLE ALEX GUYNN, JUDGE |
| | APPELLEE | |
| | | AFFIRMED |

**CINDY GRACE THYER, Judge**

Appellant Tracy Davis appeals his Jefferson County Circuit Court conviction of one count of fleeing in a vehicle—a Class D felony.[1] In support of his claim for reversal, he argues that there is insufficient evidence to support his conviction, that his right to a speedy trial has been violated, and that the circuit court improperly admitted evidence of a prior conviction during the guilt phase of trial. After reviewing the record and the arguments on appeal, we find no error and affirm.

---

[1]The information and the sentencing order state that he was charged with "fleeing in a vehicle causing damage." The "causing damage" language, however, is superfluous for the Class D felony-fleeing statute in effect at that time. Ark. Code. Ann. § 5-54-125(d)(2) (Supp. 2019).

I. *Factual and Procedural History*

At approximately 9:00 p.m. on November 12, 2020, a white four-door Hyundai Electra ran a stop sign, almost striking another vehicle and forcing it off the road. Lieutenant Jason Howard observed the incident and began pursuit of the Hyundai, which sped off at a high rate of speed and without headlights. When Howard activated his lights, the Hyundai pulled over before taking off again at a high rate of speed. Howard then activated his sirens and engaged in a pursuit, which other officers eventually joined.

During the pursuit, the Hyundai ran several stop lights and at least six stop signs, including two at busy intersections. It reached speeds between sixty and seventy miles an hour, despite a thirty-mile-an-hour posted speed limit. Several of the streets traveled were narrow streets in a residential area. While there was not much traffic at the time, at least two of the intersections were located on well-traveled roads where there is frequently heavy traffic. At one point during the chase, the Hyundai almost collided with a Jefferson County Sheriff's vehicle. The pursuit ended shortly thereafter when the Hyundai lost control, slid into a ditch, and struck a culvert.

The driver (Davis) and his passenger (Nia Bullard) exited the vehicle and fled on foot. Officers gave chase and were able to apprehend them. When officers searched the vehicle, they found Davis's identification. They also determined that the Hyundai had been reported stolen.

On January 13, 2021, the State filed an information charging Davis with felony fleeing in a vehicle and theft by receiving property valued at over $5,000 but less than

$25,000. The information was later amended: the theft-by-receiving charge was reduced to theft by receiving property valued at over $1,000 but less than $5,000. The fleeing charge was unaffected by the amendment.

During his February 1 plea and arraignment hearing, the court advised Davis of the charges brought against him and inquired about his ability to retain counsel. Following Davis's response, the court appointed counsel and informed him that his trial was being set for May 10 with an omnibus hearing on April 1. Davis, however, did not appear at the April 1 omnibus hearing, and an alias warrant was issued for his arrest.

On April 15, 2021, counsel moved to set aside the alias warrant. Counsel stated that Davis had been in frequent contact with his bondsman but was unaware he was to appear at the April 1 hearing. Counsel claimed that Davis later contacted him to inquire about any upcoming court dates and discovered his failure-to-appear warrant. Counsel asserted that Davis had not intentionally failed to appear and had no apparent history of such failures. The State responded that Davis had been informed of the hearing date at his plea and arraignment on February 1 and had provided no explanation for his failure to appear.

In January 2022, Davis incurred new charges after he was found with controlled substances during the execution of a search warrant. He apparently was placed in handcuffs and briefly detained but was ultimately released at the scene. Despite being detained by the police, the alias warrant was not served on him at that time; instead, service on the warrant was not effectuated until May 26, 2022. He appeared before the court for his first appearance on the new charges and the alias warrant the next day.

Davis next appeared before the court for arraignment on July 11, 2022. The court set an omnibus hearing for November 3, 2022, and set trial for January 23, 2023, on both the old (35CR-21-18) and new charges (35CR-22-160). Speedy trial was not discussed at this hearing, but the scheduling order entered thereafter stated that the period between April 1, 2021, and May 25, 2022, would be excluded for speedy-trial purposes in 35CR-21-18.

An omnibus hearing was held on November 8.[2] The discussion at that hearing revolved around a pending suppression motion in 35CR22-160 and the status of discovery. Other than that, both parties announced they were ready for trial. The court then set an issue-status hearing for January 5, 2023.[3]

At the issue-status hearing, the parties discussed the outstanding motion to set aside the alias warrant; there was no discussion of speedy trial. However, on January 19, Davis, through counsel, filed a motion to dismiss based on an alleged speedy-trial violation. He claimed that the right to speedy trial attached at the time of his arrest on November 12, 2020; that his trial was set for January 23, 2023; and that, even taking into account any defense continuances and the delay resulting from his failure to appear on April 1, 2021, speedy trial had run. Accordingly, he claimed his case should be dismissed with prejudice.

---

[2]The omnibus hearing was held on November 8, not November 3. It is unclear from the record why this date differed from the date on which it was previously set.

[3]The issue-status hearing was held on January 10, not January 5. Once again, it is unclear from the record why this date differed from the date on which it was previously set.

The case was called for trial on January 23. The State informed the court that it had recently been served with motions to dismiss based on speedy-trial violations in both 35CR-21-18 and 35CR-22-160 and needed ten days to respond. The court then asked whether Davis was detained, and his counsel responded that he was. When the court told the parties that it intended to proceed with trial, the State informed the court that the chemist from the crime lab was unavailable for trial.[4] As a result, the court continued both cases and tolled speedy trial due to the witness's unavailability. Trial was reset for February 3.

Davis filed a continuance motion on February 2 because of inclement weather. The court granted the motion and reset trial for May 10, with a speedy-trial and issue-status hearing set for March 8.

Davis's speedy-trial motions were briefly addressed at the March 8 status hearing. However, the court continued the hearing to April 5 without ruling on the motions because one of the officers involved in the January 2022 incident was injured and was unavailable to testify.

The speedy-trial hearing was continued multiple times on defense motion and was eventually held on November 2, 2023. At the hearing, the State conceded that it had been more than twelve months since Davis's arrest and that the time between Davis's arrest on November 12, 2020, until he failed to appear for his omnibus hearing on April 1, 2021, was time that should be attributable to the State. The State also noted, and the record reflects,

---

[4]The chemist was a witness scheduled in 35CR-22-160, not 35CR-21-18.

that Davis was not served with the warrant until May 26, 2022; that the arraignment on the new charges and the alias warrant occurred on July 11, 2022; and that Davis was given a January 2023 trial date at that time. The State argued that, although the July 2022 scheduling order tolled time only from the date of the failure to appear to the date the warrant was served, the time charged to the defense should span from the date of the failure to appear to the date of trial because it was Davis's absence that prevented the court from bringing him to trial earlier.

Counsel for Davis agreed that the scheduling order tolled the time between the failure to appear and the service of the arrest warrant but argued that the time between the service of the arrest warrant and trial should be charged to the State, not Davis. He claimed that because the scheduling order did not toll the latter time period, speedy trial was not waived.

After hearing the arguments of counsel, the court took the matter under advisement and withheld its ruling. The court subsequently entered its order denying the motion on November 21, 2023.

Ultimately, a jury trial was held on the theft and fleeing charges on February 12, 2024.

At trial, Lieutenant Howard testified to the facts regarding the pursuit as previously described. On cross-examination, defense counsel questioned Howard regarding his testimony about the car being driven without headlights, given that photographs had been introduced showing the vehicle in the ditch with its headlights on. Despite the photos, Lieutenant Howard still maintained that the car's headlights were off during the pursuit and surmised that the headlights might have been triggered when Davis exited the vehicle.

Defense counsel also questioned him about the lack of traffic on the roads during the pursuit and the fact that there was a discrepancy in the stolen-vehicle report regarding the color of the vehicle stolen.

Sergeant Courtney Kelly testified that she was also involved in the chase. She stated that she was driving her marked Chevy Tahoe with its lights and sirens activated when a white passenger car approached her traveling at a high rate of speed. She stated that she was forced to drive off the side of the road to avoid a collision with the white car, which was driving in the middle of the road. She did not recall whether the car had its headlights on at the time. From a picture, she identified the car that ran her off the road as the Hyundai involved in the pursuit.

Trooper Markeith Neal testified that he also engaged in the pursuit of the vehicle. He stated that officers had not blocked the intersections of the roads they traveled and that civilian vehicles were placed in danger in at least one intersection. When the Hyundai wrecked, Neal exited the vehicle with his gun and flashlight and ordered the occupants of the Hyundai to get down on the ground. When Davis fled on foot, Neal switched from his firearm to his taser and ordered Davis to stop. When Davis did not do so, Neal deployed his taser and took him into custody. Like Sergeant Kelly, he also did not remember whether the car's headlights were on.

Michelle McBirney testified that she was the owner of the Hyundai and that she had reported it stolen. She stated she does not know Davis, and she had not allowed him to have

her vehicle. She testified that the car was worth approximately $2500, but it was so damaged after the wreck that she simply turned it over to the towing company.

Davis then testified on his own behalf. He admitted that he was driving the white Hyundai on November 12, 2020, but denied that it was stolen. He further admitted that he had driven through the first stop sign, which resulted in the police attempting to pull him over. He said he initially pulled over, but his passenger, Nia Bullard, became agitated and started yelling that the police were after her, so he took off. He stated he was also afraid of being pulled over because he had stolen the license plates on the vehicle.

As for his actions during the pursuit, he denied nearly colliding with Sergeant Kelly's vehicle and that there were any other vehicles present during his chase. He stated that if he had passed Sergeant Kelly on the street, he would have hit her because the streets were so narrow. He further claimed that Sergeant Kelly could not have pulled off to the side of the road as she claimed because there was no shoulder, only a ditch. He claimed his headlights were on during the chase and after he ran into the ditch. He denied attempting to flee on foot, claiming he exited the car after the crash because the vehicle was smoking, and he was afraid there was a fire. It was at that point the officers attempted to tase him. In the end, he admitted trying to evade police, denied he placed anyone's life in danger, and denied stealing the vehicle.

On cross-examination, the State introduced evidence of three prior convictions. The first was a felony criminal-mischief conviction from 2014. The second was a 2011 felony conviction for issuing a hot check. The last was a perjury conviction from 1995.

As for the current charges against him, he claimed he purchased the Hyundai in September 2020 from an acquaintance, John Butler, and that McBirney must be lying if she claimed she owned the vehicle in October 2020. He candidly admitted that the stolen license plate may have been hers. He also admitted that he ran several stop signs but claimed to have stopped at one intersection because cars were approaching. He also claimed that his speed never surpassed sixty miles an hour.

After hearing the evidence and the arguments of counsel, the jury convicted Davis of fleeing but acquitted him of the theft-by-receiving charge. He was sentenced as a habitual offender to seven years in the Arkansas Division of Correction. This appeal followed.

## II. *Arguments on Appeal*

On appeal, Davis argues that there was insufficient evidence to support his fleeing conviction, that his right to a speedy trial has been violated, and that the circuit court improperly admitted evidence of a prior conviction during the guilt phase of trial. Each of these arguments will be discussed in turn.

## A. Sufficiency of the Evidence

Davis first argues that there was insufficient evidence to support his fleeing conviction. More specifically, he argues that there was insufficient evidence that he purposely operated his vehicle in a manner that created a substantial danger of death or serious physical injury to another person or that he manifested an extreme indifference to the value of human life.

Davis, however, failed to make these specific arguments below. Instead, at the close of the State's case and as to the charge of fleeing, counsel generically argued, "I don't believe that there's been the evidence to show that he has engaged in the conduct of felony fleeing – perhaps, misdemeanor. . . ." At the close of all the evidence, counsel renewed his motions for directed verdict, arguing that there was "insufficient evidence to establish the State's cases by proof beyond a reasonable doubt, especially on the offense of theft by receiving." While he expounded a little more on the inadequacy of the evidence on the theft charge, he provided no further explanation as to the fleeing charge.

Arkansas Rule of Criminal Procedure 33.1(c) states in relevant part the degree of specificity required in regard to motions for directed verdict:

> A motion for directed verdict . . . based on insufficiency of the evidence must specify the respect in which the evidence is deficient. A motion merely stating that the evidence is insufficient does not preserve for appeal issues relating to a specific deficiency such as insufficient proof on the elements of the offense.

Ark. R. Crim. P. 33.1(c) (2018). "The rationale behind this rule is that 'when specific grounds are stated and the absent proof is pinpointed, the circuit court can either grant the motion, or, if justice requires, allow the State to reopen its case and supply the missing proof.'" *Maxwell v. State*, 373 Ark. 553, 559, 285 S.W.3d 195, 200 (2008) (quoting *Pinell v. State*, 364 Ark. 353, 357, 219 S.W.3d 168, 171 (2005)). Likewise, an appellant is bound by the scope and nature of his directed-verdict motion and cannot change his argument on appeal. *Scott v. State*, 2015 Ark. App. 504, at 4, 471 S.W.3d 236, 239.

Here, Davis's motion failed to adequately specify any deficiencies in the State's proof and is therefore inadequate to preserve for appellate review the specific challenge to the sufficiency of the evidence he now raises on appeal. *E.g.*, *Bienemy v. State*, 374 Ark. 232, 236–37, 287 S.W.3d 551, 555 (2008).

Even were we to find his motions for directed verdict adequate, his argument would still fail because there was sufficient evidence upon which the jury could find he committed the fleeing offense.

A motion for directed verdict at a jury trial is considered a challenge to the sufficiency of the evidence. *Roberts v. State*, 2024 Ark. App. 143, 686 S.W.3d 69. When reviewing the sufficiency of the evidence, this court assesses the evidence in the light most favorable to the State, considering only that evidence that supports the verdict. *Id.* A conviction is affirmed if there is substantial evidence, either direct or circumstantial, to support the verdict; substantial evidence is evidence of sufficient force and character that it will, with reasonable certainty, compel a conclusion one way or the other without resorting to speculation or conjecture. *Id.* It is the jury's responsibility to determine witness credibility; it may believe all or part of any witness's testimony and must resolve questions of conflicting testimony and inconsistent evidence. *Id.* The jury is entitled to draw upon its common sense and experience in reaching its verdict. *Id.*

Arkansas Code Annotated section 5-54-125(a) provides that "[i]f a person knows that his or her immediate arrest or detention is being attempted by a duly authorized law enforcement officer, it is the lawful duty of the person to refrain from fleeing, either on foot

11

or by means of any vehicle or conveyance." At the time of his offense,[5] fleeing by means of a vehicle was a Class D felony "if under circumstances manifesting extreme indifference to the value of human life, a person purposely operates the vehicle or conveyance in such a manner that creates a substantial danger of death or serious physical injury to another person." Ark. Code Ann. § 5-54-125(d)(2) (Supp. 2019).

Here, Davis admits that there was testimony at trial that he ran several stop signs and red lights, drove approximately sixty to seventy miles an hour through a residential neighborhood without his headlights on, and almost collided with a Jefferson County deputy before ending up in a ditch. However, he claims that this testimony was contradicted or called into question by other evidence. He notes that officers were uncertain whether Davis's headlights were on during the pursuit and that a photograph of the vehicle with its headlights on was admitted into evidence. He further argues that the officers testified that there was little if any traffic present during the pursuit, and there was no mention in the radio traffic logs that Davis nearly collided with another vehicle during the pursuit. Thus, there was sufficient evidence that he drove in such a way as to create a substantial danger of death or serious physical injury to another person or that he drove under circumstances manifesting extreme indifference to the value of human life. He is incorrect that the evidence presented was insufficient.

_____

[5]Act 722 of 2021, which became effective on July 28, 2021, made the offense a Class C felony. It is currently codified at Arkansas Code Annotated section 5-54-125(d)(3) (Supp. 2025).

Here, Davis admitted that he ran the stop sign that initiated the pursuit. He further admitted that he ran several stop signs and stop lights. He admitted that he reached speeds of up to sixty miles an hour and that the chase occurred in a residential area with narrow streets and no shoulders. While he claimed there was little traffic and denied that he nearly collided with Sergeant Kelly's vehicle, the State presented testimony contradicting his claims. When considering the sufficiency of the evidence to support a conviction, our standard of review requires us to view the evidence in the light most favorable to the State and to consider only evidence that supports the conviction. *See Overton v. State*, 2025 Ark. 105. And the jury, as the trier of fact, is free to believe all or part of the witnesses' testimony and to resolve any questions of conflicting testimony and inconsistent evidence; any variance or discrepancy in the proof goes to the weight or credibility of the evidence and, thus, is a matter for the fact-finder to resolve. *Starling v. State*, 2016 Ark. 20, 480 S.W.3d 158. Under this standard, the evidence presented at trial was sufficient to support his fleeing conviction.

## B. Speedy Trial

Davis next argues that the circuit court erred in denying his motion to dismiss on speedy-trial grounds. In light of the argument presented to us, we must affirm.

The time for speedy trial begins to run on the date of either the defendant's arrest or the service of summons. Ark. R. Crim. P. 28.2(a). It continues to run uninterrupted except during any applicable "excluded periods" set forth in Rule 28.3. The filing of a speedy-trial motion tolls the running of the time for a speedy trial under our rules. *Barefield v. State*, 2021 Ark. App. 151. If the defendant is not brought to trial within the requisite time, the

defendant is entitled to have the charges dismissed with an absolute bar to prosecution. *State v. Crawford*, 373 Ark. 95, 281 S.W.3d 736 (2008) (citing Ark. R. Crim. P. 30.1).

When a defendant makes a prima facie showing of a speedy-trial violation, the burden shifts to the State to show that the delay was the result of the defendant's conduct or was otherwise justified. *Crawford*, *supra.* A prima facie case for a speedy-trial violation is made when there is a period of delay beyond twelve months from the date of the charge. *Id.* On appeal, we conduct a de novo review to determine whether specific periods of time are excludable under speedy-trial rules. *Id.*

Here, because Davis was not brought to trial within twelve months of the date of his arrest, he presented a prima facie case for a speedy-trial challenge; the burden of proving that the extra days were legally justified and excludable now shifts to the State. *See Crawford*, *supra.* The delay between his arrest, November 12, 2020, and the date his motion to dismiss was filed, January 19, 2023, is 798 days; accordingly, the State bears the burden of showing that at least 433 days should not be included in the calculation. Davis challenges only one time period that the court excluded from his speedy-trial calculation—the time period following the service of the bench warrant until the filing of his motion to dismiss.

Davis submits that the time period between his November 12, 2020 initial arrest and the April 1, 2021 omnibus hearing where he failed to appear—a total of 140 days—was properly charged to the State. The State does not dispute this calculation. The parties further agree that the time period between April 1, 2021, and the service of the bench warrant for his failure to appear on May 26, 2022—a total of 420 days—should be excluded from the

14

calculations. That leaves the remaining 238 days unaccounted for. If that time period is attributable to the State, Davis's speedy-trial rights have been violated.

The parties have made the following arguments with respect to this time period. Davis, without detailed explanation, asserts that the 238 days between the service of the bench warrant on May 26, 2022, and the filing of the motion to dismiss on January 19, 2023, should be attributed to the State. The State, citing *Osborn v. State*, 340 Ark. 444, 11 S.W.3d 528 (2000), and *Burns v. State*, 2024 Ark. App. 329, 690 S.W.3d 133, argues that the time period between Davis's failure to appear on April 1, 2021, through the next trial date—January 23, 2023—should be excluded for purposes of speedy trial.

In order to properly analyze the claims, we first look to the cases cited by the State. In *Osborn*, the appellant failed to appear for trial. He was later arrested in Colorado and returned to Arkansas. He subsequently moved for a dismissal, alleging the State was required to set his trial within the eighteen days after his return from Colorado in order to comply with speedy-trial requirements and had not done so. Our supreme court noted that such a requirement would have the effect of disrupting the circuit court's entire docket and that it was not required to do so. Instead, the court need only set trial for the next available trial date. In *Burns*, the appellant failed to appear for court, and a warrant was issued for his arrest. He was later arrested on the warrant, and trial was reset approximately seven months later. This court, relying on *Osborn*, held that any delay between the failure of the appellant to appear and the next trial date is excluded for purposes of calculating speedy trial.

15

Here, Davis's arraignment following the service of the alias warrant was in July 2022 at which time Davis's case was placed back in rotation with an omnibus hearing scheduled for November 2022 and a trial scheduled for January 2023. Davis has not argued that the January 23, 2023 trial setting was not the next available trial setting. Thus, applying the law in *Osborn* and *Burns*, as we must do, the time period between Davis's failure to appear in April 2021 and the filing of his motion to dismiss on January 19 was properly excluded. Accordingly, we affirm on this issue.

## C. Admissibility of Prior Conviction

For his final argument, Davis argues that the circuit court erred in allowing his 2014 felony criminal-mischief conviction to be admitted into evidence for impeachment purposes, claiming that it failed to engage in the appropriate prejudicial effect versus probative-value analysis under Arkansas Rule of Evidence 609. Because it is apparent from the record that the court considered the proper analysis before denying Davis's request to exclude the conviction, we affirm on this point as well.

Here, after advising the court that Davis would testify at trial, the parties discussed whether certain prior convictions would be admissible for purposes of impeaching Davis's credibility. Defense counsel agreed that Davis's prior perjury charge would be admissible and that the court could find that his felony hot-check violation should be allowed. As for the criminal-mischief conviction at issue here, the following colloquy occurred:

PROSECUTOR: The criminal mischief – date of conviction was April the 29th of 2014. 609 specifically says that evidence of a conviction is not admissible but – if a period of more than 10 years has elapsed

16

since the date of conviction or the release of a witness from the confinement imposed for that conviction, whichever is the later date. I mean, it's – he did receive ADC time for that, so even if just going back to the conviction date, its April the 29th of 2014. Today is February the 12th 2024. It's – the conviction date itself is within the last 10 years. If you want to go when he was in prison and paroled for, that's going to be even closer to the day. So I think criminal mischief should be in.

DEFENSE COUNSEL: Well, it also says, Judge, you have to make a determination as to whether the probative value outweighs the prejudicial value. And we believe there's no probative value to a felony charge of criminal mischief in this particular case.

COURT: Anything to that, State?

PROSECUTOR: No, nothing further, Your Honor.

COURT: I'm going to allow it. I'm going to allow it.

As shown above, the circuit court made its ruling immediately after defense counsel argued the probative-versus-prejudicial nature of the criminal-mischief conviction. Accordingly, the record is clear that the court made that determination despite its failure to expressly say so. As long as it is evident from the record that the circuit court has determined that the probative value outweighs the potential for unfair prejudice, Rule 609 is satisfied. *See Ellis v. State*, 2012 Ark. 65, 386 S.W.3d 485 (concluding that Rule 609 was satisfied even though the circuit court did not explicitly perform the probative-value/prejudicial-effect analysis on the record because it issued its ruling after hearing arguments from both the prosecutor and defense counsel regarding the probative-versus-prejudicial nature of the prior convictions).

For the foregoing reasons, we affirm.

Affirmed.

GLADWIN and MURPHY, JJ., agree.

*Vicki Lucas*, for appellant.

*Tim Griffin*, Att'y Gen., by: *Rebecca Kane*, Ass't Att'y Gen., for appellee.